WILLIAM GRANT *et al.*
*v.*
ALBERT M. FELLOWS.

1. CHANCERY—*rescission of contracts—because of fraudulent representations.* A bill was filed in this case to rescind a deed, on the ground of

fraudulent representations made by the grantee at the time of its execution, and it was *held,* that the facts did not authorize such relief—the grantee having made no false statement of any material fact which influenced the conduct of the other party, nor suppressed any fact that he was bound to disclose.

2.  SAME—*false representation—what is not.*  And in such case it can not be said that a fraud has been practiced upon the vendor because of a statement made by the purchaser at the time of the sale, that he intended to buy an adverse title, and would probably have to pay for it about all the land was worth, and instead of so doing, he subsequently litigated with the owner of it, and was successful.  Whether he proposed to buy such adverse claim, or litigate with the owner of it, was no affair of the vendor, and could not have influenced his action.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. BENJAMIN S. EDWARDS, Judge, presiding.

This was a bill in chancery, filed by William Grant and Harrison G. Wright, in the circuit court of Sangamon county, against Albert M. Fellows, to rescind a certain deed executed by them to said Fellows, conveying the S. W. ¼ of Sec. 9, T. 18, R. 4 W., 3d P. M., for alleged fraudulent representations in the procurement of said deed.  The facts in the case are fully stated in the opinion of the court.

Mr. L. WELDON, Messrs. ROSETTE & BRO., and Mr. WM. B. JONES, for the plaintiffs in error.

Messrs. HAY, GREENE & LITTLER, for the defendant in error.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

In 1864, Fellows, the appellee, then residing in Logan county, went to New Jersey and purchased from the appellants the patent title to a quarter section of land, situate in said county. Appellants had paid no taxes on the land for sixteen years, and were in doubt as to whether they had not conveyed it with various other Illinois lands which they formerly held as trustees for a company.  The appellee was also in doubt, as the records of Logan county had been burned.  There were two tax titles on

the land, under which it was occupied. The appellee bought the title of appellants for $125, and in October, 1864, commenced an action of ejectment against the occupant under the tax titles, and after two years of litigation recovered the land. The appellants then filed a bill against him to rescind their deed, on the ground of fraudulent representations made by the grantee at the time of its execution.

The original bill charges that appellee represented to them that he owned a good tax title to the land, and that their title was worthless, but that, as he was about to sell the land, he wished to remove the cloud. The bill was twice amended. The last amended bill charges, not that he represented himself as owning the tax title, but that he said the land was covered by a tax title which he was intending to buy, and desired a conveyance from them in order to remove a cloud, thus creating the impression that their title was worthless, when he knew it to be good. The parties were sworn, and their testimony is conflicting. There is but one disinterested witness as to what occurred at the interview between the parties in New Jersey. He was a resident of that State, to whom the appellee carried a letter of introduction, and went with appellee to see the appellants. His testimony is clear, and he corroborates that of appellee. He swears the appellee did not claim to own the tax title himself, but said the land was held under a tax title, and that he wished to buy the land, but if he did so he desired to get a perfect title. The witness further testifies that he expressed no opinion about the validity of the tax title, but said he supposed he would have to give about all the land was worth to get it. The defendants refused to make more than a quit claim deed, for which they only asked $200, which the appellee declined to give, and they finally offered to make such a deed for $125, which offer appellee accepted.

As the land was worth twenty dollars per acre, and the title bought from appellants proved, after litigation, to be the paramount title, they certainly made a very unfortunate bargain, but they were not defrauded. If a court of chancery were to

rescind this contract it must do so in every case where the lapse of time proves the consideration to have been inadequate. There is here no element of fraud. McGalliard, the witness of the transaction, denies that appellee made any statement as to the validity of the tax title; but even if he had made one, it would have been merely the expression of an opinion upon a legal question, of which he could know nothing, and as to which it would have been simple folly in the appellants to rely upon his judgment. He was not their advisor, nor did he claim any legal knowledge or special knowledge of titles. He might have said, and have said with entire truth, that it was very probable the tax titles would hold the land if possession were taken under them, since the appellants did not claim to have paid any taxes for at least sixteen years, and the chances would greatly preponderate that a bar had been acquired under the limitation law. But he made no false statement of any material fact, nor did he suppress any fact that he was bound to disclose, and only on one of these grounds could a decree of rescission be based. He said he was intending to buy the tax title, and would probably have to pay for it about all the land was worth, and he did not in fact buy the title, but litigated with the owner of it and was successful. But this statement was no fraud upon the appellants. It was no affair of theirs whether the appellee intended to compromise or litigate with the owner of the adverse claim, or whether, having stated he intended to take the one course, he subsequently changed his purpose and adopted the other. Probably he may have intended to buy the adverse title, if he could do so on satisfactory terms, but whether he proposed to do so or not, was a matter which could not have influenced appellants in making the sale. Under all the circumstances this claim to rescind is singularly barren, for not only was there no actual fraud practiced, but the appellants make no complaint and set up no claim until the appellee has established his title after two years of litigation, two trials, and an appeal to the Supreme Court, which was dismissed at the January Term, 1867.

*Decree affirmed.*